IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re MALLINCKRODT PLC, *et al.*, | : | Chapter 11 |
| | : | Bankr. Case No. 20-12522-JTD |
| Debtors. | : | (Jointly Administered) |
| | : | |
| CITY OF ROCKFORD, *et al.*, | : | Adv. No. 20-50850 (JTD) |
| | : | |
| Appellants, | : | |
| v. | : | Civ. No. 20-1533-LPS |
| | : | |
| URMILA PARANJPE BAUMANN, *et al.*, | : | |
| | : | |
| Appellees. | : | |

## **MEMORANDUM ORDER**

Having reviewed the papers submitted in connection with Appellees' motion to dismiss (D.I. 5) (the "Motion to Dismiss") the instant appeal of the Bankruptcy Court's November 13, 2020 order quashing subpoena (Adv. D.I. 102)[1] (the "Quash Order"), including the opposition to the Motion to Dismiss (D.I. 14) filed by City of Rockford and Appellees' reply in further support of the Motion to Dismiss (D.I. 16),

IT IS HEREBY ORDERED that the Motion to Dismiss (D.I. 5) is GRANTED, for the reasons that follow:

**1. *Introduction.*** This dispute arises out of an adversary proceeding filed in the chapter 11 cases of Mallinckrodt plc ("Mallinckrodt") and its affiliates (together, "Debtors"). Mallinckrodt sought to temporarily enjoin the prosecution of various actions relating to its drug Acthar, in which Mallinckrodt and nondebtors Express Scripts Entities are co-defendants, including one action brought by City of Rockford. The Quash Order granted Appellees' Motion to Quash Subpoena or for a Protective Order (Adv. D.I. 72) ("Motion to Quash") filed with

---

[1] The docket of the adversary proceeding, captioned *Mallinckrodt plc v. State of Connecticut, et al.*, Adv. No. 20-50850-JTD (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

respect to an amended subpoena issued by City of Rockford and other Acthar Plaintiffs[2] to the Express Scripts Entities' Associate Chief Counsel of Litigation, Urmila Paranjpe Baumann. City of Rockford has not sought leave to appeal but, instead, argues that the Quash Order is appealable (i) under the collateral order doctrine, (ii) because it should be considered final under the flexible pragmatic approach to bankruptcy orders, and (iii) because it satisfies the criteria of 28 U.S.C. § 1292(b).

**2.** ***Background.*** On October 12, 2020, Debtors filed a Supplemental Motion for Injunctive Relief (Adv. D.I. 16) pursuant to § 105(a) of the Bankruptcy Code, which sought, in part, a preliminary injunction enjoining certain plaintiffs from pursuing claims against certain third parties, including the Express Scripts Entities, for an initial period of 270 days. (Adv. D.I. 17 at 7-11) Debtors' request was based on indemnification rights asserted by the Express Scripts Entities in connection with that litigation, as well as the cost, burden, and distraction that continuation of litigation would have on the Debtors' reorganization efforts. (*See* D.I. 14-2, 11/18/20 Hr'g Tr. at 8)

City of Rockford, together with other Acthar Plaintiffs, sought discovery to determine the basis for the indemnity claim. (*See* D.I. 14 at 1) Acthar Plaintiffs asserted, among other things, that the indemnity claim was not timely asserted under the relevant agreements. (*See id.*) On November 2, 2020, Acthar Plaintiffs served a subpoena on Ms. Baumann (Adv. D.I. 73, Ex. 1),

---

[2] The "Acthar Plaintiffs" consist of the following: the City of Rockford ("Rockford"), Steamfitters Local Union No. 420 ("Steamfitters Local 420"), the International Union of Operating Engineers Local 542 ("IUOE Local 542"), United Association of Plumbers & Pipefitters Local 322 of Southern New Jersey ("Plumbers Local 322"), and Acument Global Technologies ("Acument"), individually and on behalf of the classes of third-party payors ("TPPs") and their beneficiaries that Rockford, Steamfitters Local 420, and Plumbers Local 322 seek to represent in their respective cases currently pending in federal district courts in the Northern District of Illinois, the Eastern District of Pennsylvania, and the District of New Jersey, respectively.

who had sent Mallinckrodt a demand for indemnification on behalf of the Express Scripts Entities. (Adv. D.I. 18, Ex. Q) On November 4, 2020, Appellant served an amended subpoena on Ms. Baumann that included three requests, seeking documents and communications relating to any common interest agreement between the Debtors and the Express Scripts Entities, as well as any claims for indemnification and contribution, and noticing Ms. Baumann's deposition for November 11, 2020. (Adv. D.I. 73, Ex. 2) Subject to certain objections, including that the amended subpoena sought privileged information, Ms. Baumann responded there was no written joint defense or written common interest agreement between Mallinckrodt and the Express Scripts Entities in connection with the Acthar litigation, "although the parties do share a common interest in defending against Plaintiffs' claim in the underlying Acthar litigations." (*Id.* Ex. 3) Ms. Baumann further responded that "[t]he only non-privileged document responsive to Request No. 3 is the October 14, 2020 indemnity letter from the Express Scripts Entities to Mallinckrodt," which City of Rockford already possessed. Ms. Baumann provided a draft supplemental draft declaration ("Baumann Declaration") providing the information she had to offer and confirming that no communications between herself and Mallinckrodt existed relating to the indemnification request and/or any joint defense prior to the October 14 demand letter. (*Id.* Ex. 6)

City of Rockford continued to require that Ms. Baumann sit for a deposition. (*Id.* Ex. 7) On November 12, 2020, Ms. Baumann and the Express Scripts Entities filed the Motion to Quash, asserting that the amended subpoena sought privileged and irrelevant information, which was duplicative of other discovery taken by City of Rockford, and that it was overly broad and unduly burdensome. (Adv. D.I. 72)[3] They further argued that the City of Rockford had made no

---

[3] Specifically, Ms. Baumann and the Express Scripts Entities argued the only responsive and relevant information that Ms. Baumann would testify about was available via less burdensome

3

showing that Ms. Baumann's deposition was needed in order to present any arguments to the Bankruptcy Court in opposition to Mallinckrodt's Supplemental Motion for Injunctive Relief.

City of Rockford opposed the Motion to Quash. (Adv. D.I. 100) On November 13, 2020, the Bankruptcy Court entered the Quash Order. (Adv. D.I. 102) On November 16, 2020, City of Rockford filed its notice of appeal from the Quash Order. (D.I. 1) City of Rockford seeks to argue on appeal that it was denied the opportunity to obtain evidence vital to opposing the Preliminary Injunction Order, despite its stated intent to pursue only factual, non-privileged discovery. (*See* D.I. 14 at 6) According to City of Rockford, the Baumann Declaration was vague and conflicted with prior testimony in the case regarding a joint defense agreement. (*Id.*) City of Rockford asserts that the Bankruptcy Court improperly denied its right cross-examine Ms. Baumann, as "a declaration without cross-examination allows one side to dictate what is relevant as well as what is privileged." (*Id.*)

On November 16-18, 2020, the Bankruptcy Court received evidence and heard argument on the Supplemental Motion for Injunctive Relief. On November 23, 2020, the Bankruptcy Court issued a bench ruling granting the relief and extending the automatic stay to certain third parties, including the Express Scripts Entities, for 270 days (Adv. D.I. 180) ("Preliminary Injunction Order"). With respect to the jurisdictional analysis, the Bankruptcy Court identified the standard for its "related-to" jurisdiction over a proceeding as whether "the outcome of th[at] proceeding could conceivably have any effect on the estate being administered in bankruptcy."

---

means, i.e., a sworn declaration; the amended subpoena sought duplicative discovery from Ms. Baumann, a non-party, that City of Rockford already possessed or could have obtained from Mallinckrodt witnesses and depositions; the amended subpoena sought irrelevant information which City of Rockford had twice before sought and been denied by the U.S. District Court for the Northern District of Illinois in the underlying Acthar litigation; and the amended subpoena on its face sought to invade the attorney-client and work product privileges by demanding discovery of privileged information. (Adv. D.I. 72)

(*See* D.I. 5-3, 11/23/20 Hr'g Tr. at 44 (quoting *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)) The Bankruptcy Court concluded that continuing the litigation against the Express Scripts Entities would give rise to several "adverse impacts," including (i) risk to the Debtors of the successful assertion of indemnity obligations, based on "the three indemnity agreements referred to by [the Express Scripts Entities]" (*id.* at 46); (ii) risk to the Debtors of record taint and collateral estoppel (*see id.* at 47); and (iii) discovery demands upon the Debtors (*id.*). The Bankruptcy Court concluded that "[a]ny of these factors could have an adverse impact on the debtors' estates sufficient to establish related to jurisdiction under [§] 1334." (*Id.*) The Acthar Plaintiffs appealed the Preliminary Injunction Order. (*See Mallinckrodt plc v. State of Connecticut*, Misc. No. 20-408-LPS, D.I. 1) By Memorandum Order dated February 11, 2021, this Court denied Appellants' motion for leave to appeal the interlocutory Preliminary Injunction Order. (*Id.* D.I. 5) The Preliminary Injunction Order is not the subject of this appeal.

3. ***Jurisdiction.*** This Court has jurisdiction to hear appeals "with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(3).

4. ***Analysis.*** City of Rockford did not seek leave to appeal the Quash Order. Instead, City of Rockford argues that: (i) the Quash Order falls within the collateral order doctrine (*see* D.I. 14 at 6-10); (ii) the Quash Order should be considered final (*see id.* at 10-14); or (iii) the Court should grant City of Rockford leave to appeal the Quash Order (*see id.* at 14-18).

### A. *The Collateral Order Doctrine Does Not Apply*

City of Rockford asserts that the collateral order doctrine applies to the Quash Order, which would allow the Court to immediately review it. (D.I. 14 at 6-10) The collateral order doctrine accommodates a small class of rulings that, while not concluding the litigation, do "finally determine claims of right separable from, and collateral to, rights asserted in the action."

5

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). These are claims that are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* To establish collateral order jurisdiction, an appellant must show that the subject order (i) "conclusively determine[d] the disputed question" (ii) "resolve[d] an important issue completely separate from the merits" of the action, and (3) would "be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (internal quotations omitted).

Although not clear, City of Rockford appears to argue that the Quash Order conclusively determined an important (discovery) issue, which was whether City of Rockford "can require the author of a publicly filed letter to appear for deposition and answer questions about the timing of the letter and the assertion of the purported [indemnity] claim" where City of Rockford otherwise "had no facts available to it to analyze that claim." (D.I. 14 at 7) According to City of Rockford, the purported indemnity claim on which it was denied discovery was the sole basis for the Bankruptcy Court's determination that it had jurisdiction to enter the Preliminary Injunction Order, thus "the facts here satisfy the Third Circuit's requirement of a final rather than a provisional disposition of an issue." (*Id.*) Additionally, City of Rockford asserts, the Quash Order will be effectively unreviewable on appeal after the 270-day relief granted in the Preliminary Injunction Order "runs its course." (*See id.* at 8-9)

The Quash Order does not meet the elements of the collateral order doctrine. The Third Circuit has held that this doctrine must be "narrowly circumscribe[d]" to a "small class" of orders "involving interests that are 'weightier than the societal interests advanced by the ordinary operation of final judgment principles'" or that are "serious and unsettled." *In re Search of Elec. Commc'ns in the Account of chakafattah@gmail.com*, 802 F.3d 516, 524-26 (3d Cir. 2015) (quoting *United States v. Wecht*, 537 F.3d 222, 230 (3d Cir. 2008)). This "small class" of orders

rarely if ever will include discovery orders. *See generally ADAPT of Phila. v. Phila. Hous. Auth.*, 417 F.3d 390, 395 (3d Cir. 2005) ("The District Court's orders granting ADAPT's motions [to compel] did not resolve an issue 'completely separate from the merits of the dispute.' On the contrary, they resolved a discovery dispute, intertwined with the merits of an underlying action."); *Powell v. Ridge*, 247 F.3d 520, 528-29 (3d Cir. 2011) (Roth, J., concurring) ("Our conclusion that we lacked jurisdiction was not a new limitation on the collateral order doctrine but rather a consistent application of the long-standing rule that simple discovery orders are not final orders subject to immediate review."); *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107-14 (2009) (affirming decision that collateral order doctrine does not apply to order granting motion to compel information implicating attorney-client privilege).

### B. *The Quash Order Is Not Final*

Generally, an appeals court "lacks jurisdiction to review an order granting a motion to quash a subpoena because the order would be reviewable as error after the final judgment on the merits." *CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 713 F.2d 494, 496 (9th Cir. 1983); *see also New York v. U.S. Metals Refining Co.*, 771 F.2d 796, 799 (3d Cir. 1985) ("Pretrial discovery orders are not 'final decisions' . . . ."). City of Rockford argues that the Quash Order should be considered final under the flexible pragmatic approach applied in the Third Circuit.

"Because bankruptcy cases involve numerous parties with different claims, the court must consider the practical consequences of delaying resolution of the issue presented." *In re Brown*, 803 F.2d 120, 122 (3d Cir. 1986). "In bankruptcy matters [the Third Circuit has] consistently considered finality in a more pragmatic and less technical sense than in other matters and the concept, for purposes of appellate jurisdiction, should be viewed functionally." *In re Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir. 1987). "The impact on the estate is the '[f]irst and most important' factor in considering finality." *Century Glove, Inc. v. First Am. Bank of New*

7

*York*, 860 F.2d 94, 98 (3d Cir. 1988) (quoting *Meyertech*, 831 F.2d at 414). "Th[is] factor recognizes that issues central to the progress of the bankruptcy petition, those 'likely to affect the distribution of the debtor's assets, or the relationship among the creditors,' should be resolved quickly." *Id.* (quoting *Brown*, 803 F.2d at 122). "On the other hand, where the order does not affect those central interests, so that the pragmatic concerns have less force, this court has applied the traditional finality requirements." *Id.* (internal quotation marks omitted).

Consistent with these standards, courts have articulated various factors, including "among other things, (1) whether the order leaves additional work to be done by the Bankruptcy Court, (2) whether the order implicates purely legal issues, (3) the impact of the Bankruptcy Court's order upon the assets of the debtor's estate, (4) the necessity for further fact-finding on remand to the Bankruptcy Court, (5) the preclusive effect of the District Court's decision on the merits of subsequent litigation, and (6) the furtherance of judicial economy." *In re F-Squared Inv. Mgmt. LLC*, 2019 WL 1417464, at *3 (D. Del. Mar. 29, 2019).

Even applying the flexible pragmatic approach to finality of bankruptcy court orders, courts have held that "pretrial discovery decisions are not considered to be final decisions subject to immediate appeal." *In re Kaiser Grp. Int'l, Inc.*, 400 B.R. 140, 143 (D. Del. 2009). "Bankruptcy Court orders granting or denying discovery do not finally dispose of an entire claim on which relief may be granted, and therefore are generally treated as interlocutory and not appealable as of right." *Hoffenberg v. Cohen (In re Towers Fin. Corp.)*, 164 B.R. 719, 720 (S.D.N.Y. 1994). The Court reaches the same result here.

The most important factor is the impact of the Quash Order upon the assets of the Debtors' estate. The Quash Order does not impact the estate at all, as the amended subpoena only seeks discovery from a non-party, Ms. Baumann. City of Rockford argues that the Quash Order "could have disastrous effects on the debtors' estate" because the sought-after discovery

8

"would have provided information about the factual basis for the indemnity claim" that purportedly "[d]ebtors have decided not to oppose." (D.I. 14 at 12-13) City of Rockford describes the "purported indemnity claim" as "the sole basis for the bankruptcy court holding it had jurisdiction to issue the preliminary injunction order." (*Id.* at 2 n.2, 7-8) City of Rockford is mistaken. The Bankruptcy Court made clear that it was not deciding the merits of the indemnity claims or whether they would ultimately be successful. (D.I. 5-3, 11/23/20 Hr'g Tr. at 46) (noting "question is only whether potential indemnity claims exist," not whether they will be allowed as valid claims) The Bankruptcy Court further stated that it would have entered the Preliminary Injunction Order regardless of the indemnity claims:

> Even if I were to find that . . . ESI's alleged indemnification claims were not valid, the debtors have pointed to several other reasons (indiscernible) why continuing – excuse me – why continuation of the litigation against the nondebtor entities would have an adverse impact on the debtors' estates.

(*Id.* at 46-47) Indeed, the Bankruptcy Court found multiple other bases – independent of the existence of the indemnity claims – to justify granting the Preliminary Injunction Order, including "a risk of collateral estoppel and record taint that would require the debtors to participate in the litigation in order to protect their interests;" that City of Rockford "would need to take discovery of debtors' officers and directors in order to establish their claims against the debtors;" and that the Express Scripts Entities would need to defend themselves against the City of Rockford's claims "by pointing to the conduct of the debtors, the party that manufactured and priced the drug, especially in light of the assertions of joint and several liability against the debtors and ESI." (*Id.* at 47) Moreover, City of Rockford's assertion that Mallinckrodt has "decided not to oppose" the indemnity claims, even if true, is beside the point. As the Bankruptcy Court correctly determined, the adversary proceeding was not the appropriate forum

9

to adjudicate the factual basis and merits of the indemnity claims; "whether those claims would be valid[] . . . is an issue for another day." (*Id.* at 50)

In issuing the Preliminary Injunction Order, the Bankruptcy Court did not rule on whether the Express Scripts Entities' indemnity claims will be successful. For that reason, the information sought by City of Rockford's subpoena – "information with respect to the basis of the indemnity claim" (D.I. 14 at 4) – would not have affected the ruling on the Preliminary Injunction Order or foreclosed Mallinckrodt's ability to defend itself against the indemnification claims at the appropriate time. Thus, the Quash Order had no effect on the Debtors' estates.

Nor do the remaining factors weigh in favor of finality. City of Rockford argues that the Quash Order "addresses purely legal issues," including "whether the non-party met the heavy burden associated with quashing a subpoena." (D.I. 14 at 11) City of Rockford cites no legal support for its assertion that a decision to quash a subpoena presents a purely legal question. The Quash Order did not resolve a purely legal issue but, rather, a factual one. The Quash Order rests on the Bankruptcy Court's review of the facts and its determination of matters such as relevance, undue burden, and duplication regarding the information sought in the amended subpoena – all factual matters that were within the discretion of the Bankruptcy Court to evaluate. *See In re Jevic Holding Corp.*, 656 Fed. App'x 617, 619 (3d Cir. 2016) ("We review a decision to quash a subpoena for abuse of discretion.") (citing *N.L.R.B. v. Frazier*, 966 F.2d 812, 815 (3d Cir. 1992)); *Borden Co. v. Sylk*, 410 F.2d 843, 845 (3d Cir. 1969) ("It is a well-established principle that the scope and conduct of discovery are within the sound discretion of the trial court. It is equally well established that such orders compelling or denying discovery are generally interlocutory."). City of Rockford does not argue that the Bankruptcy Court applied the wrong standard or committed legal error in applying that standard. (*See* D.I. 14 at 8-9, 11, 15) (agreeing that Federal Rules of Civil Procedure 26 and 45 govern the scope of

10

discovery) Rather, City of Rockford simply takes issue with the Bankruptcy Court's factual determinations.

City of Rockford further argues that the Quash Order "forecloses any further work" by the Bankruptcy Court in the adversary proceeding. The Court disagrees. Although the Bankruptcy Court quashed the amended subpoena, the Quash Order did not rule on whether the City of Rockford would prevail on its opposition to the Preliminary Injunction Order. Thereafter, the Bankruptcy Court received evidence and argument over the course of three days with respect to the underlying motion before issuing its ruling. The Quash Order clearly left additional work to be done by the Bankruptcy Court.

Finally, the Bankruptcy Court held that the information sought by the amended subpoena – regarding a factual basis for the indemnity claims – would not have affected its decision to enter the Preliminary Injunction Order, which was based on other factors as well. Thus, as to judicial economy, an appeal or even a reversal of the Quash Order now would not change the result and would be a waste of the parties' time and resources.

In sum, the relevant factors do not support a finding that the Quash Order should be considered final.

### C. *The Quash Order Does Not Warrant Interlocutory Review*

Section 158(a) does not identify the standard district courts should use in deciding whether to grant leave for interlocutory appeal. "Typically, however, district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011).[4]

---

[4] *See also In re Philadelphia Newspapers, LLC,* 418 B.R. 548, 556 (E.D. Pa. 2009) ("Based upon the decision of the Third Circuit in *Bertoli v. D'Avella (In re Bertoli)*, 812 F.2d 136, 139 (3d Cir. 1987), courts within this Circuit confronted with the decision whether to grant leave to allow an interlocutory appeal are informed by the criteria in 28 U.S.C. § 1292(b).").

11

Under the standards of § 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). Entertaining review of an interlocutory order under § 1292(b) is appropriate only when the party seeking leave to appeal "establishes exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). In part, this stems from the fact that "[p]iecemeal litigation is generally disfavored by the Third Circuit." *In re SemCrude, L.P.*, 2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010) (citing *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988)). Further, leave for interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Katz*, 496 F.2d at 754.

### i. *Controlling Question of Law As To Which There Is Substantial Ground for Difference of Opinion*

"A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz*, 496 at 755. "'[C]ontrolling' means serious to the conduct of the litigation, either practically or legally. And on the practical level, saving of time of the district court and of expense to the litigants [has been] deemed . . . to be a highly relevant factor." *Id.* (internal citation omitted). The "controlling question of law" also must be one as to which there is "substantial ground for difference of opinion." 28 U.S.C. § 1292(b).

City of Rockford repeats its position that the "propriety of quashing a deposition notice issued under Rule 45 is a question of law," but cites no case law to support that position. (D.I. 14 at 15) City of Rockford is mistaken. An order granting a motion to quash necessarily implicates questions of fact, as well as the Bankruptcy Court's wide discretion to weigh factors such as relevance, burden, and privilege.

Because the Quash Order does not "involve a 'controlling question of law,'" there cannot be "'substantial ground for difference of opinion' as to its correctness." *See Katz*, 496 F.2d at 754 (quoting 28 U.S.C. § 1292(b)). City of Rockford's speculation that the Bankruptcy Court relied on unarticulated and disputed questions of privilege with which there is "certainly a substantial difference of opinion" (D.I. 14 at 16) is unsupported. Substantial ground for difference of opinion "calls for more than mere disagreement with the ruling of the Bankruptcy Court." *Mesabi Metallics Co. LLC v. Cleveland-Cliffs, Inc. (In re Essar Steel Minn. LLC)*, 607 B.R. 409, 416 (D. Del. 2019). While City of Rockford attempts to insert a dispute over legal privilege, it does not challenge the legal standard applied by the Bankruptcy Court or identify any legal error in the Bankruptcy Court's application of that standard. The Bankruptcy Court's decision is entirely consistent with well-established law.

### ii. *Whether Immediate Appeal Will Materially Advance Termination Of Litigation*

City of Rockford argues that immediate appeal will materially advance the ultimate termination of the litigation because reversal of the Quash Order will purportedly "highlight[] the basis [of] Express Scripts['] purported indemnity claim" and "requir[e] resolution of the validity of the indemnity claim." (D.I. 14 at 17) This argument is unavailing. In granting the Preliminary Injunction Order, the Bankruptcy Court explained that "[i]t is not for this Court to make an ultimate ruling on the question of whether ESI['s] indemnity claims will be successful."

(D.I. 5-3, 11/23/20 Hr'g Tr. at 46) The Bankruptcy Court further made clear that, even if it were to find "that ESI's alleged indemnification claims were not valid, the debtors have pointed to several other reasons . . . why continuation of the litigation against the nondebtor entities would have an adverse impact of the debtors' estates." (*Id.* at 46-47) Appellate review of the Quash Order will not advance, materially or otherwise, the ultimate termination of the litigation because the Quash Order and the discovery that City of Rockford sought in the amended subpoena were not necessary to the Bankruptcy Court's decision to grant the Preliminary Injunction Order.

### iii. *Whether Exceptional Circumstances Justify Immediate Appeal*

"Interlocutory appeal is meant to be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation." *AE Liquidation*, 451 B.R. at 349 (internal quotation marks omitted). City of Rockford did not identify any exceptional circumstances that might warrant deviation from the final judgment rule. (*See* D.I. 14) There is no "urgency that sets this case apart" and establishes the need for immediate review. *In re Magic Rests., Inc.*, 202 B.R. 24, 26-27 (D. Del. 1996).

**5. *Conclusion.*** For the reasons explained above, the Court GRANTS the Motion to Dismiss (D.I. 5). The Clerk is directed to CLOSE Civ. No. 20-1533-LPS.

May 21, 2021  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT JUDGE